UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MORRIS JACKSON**, | ) | Case No. 5:09 CV 1467 |
| | ) | |
| Petitioner, | ) | Judge Peter C. Economus |
| | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| **KEITH SMITH**, | ) | |
| | ) | |
| Respondent. | ) | Magistrate Judge James R. Knepp II |
| | ) | |

### Overview of State Procedural History

Petitioner Morris Jackson is a prisoner in state custody who seeks federal habeas corpus through a *pro se* petition filed on June 15, 2009, under 28 U.S.C. § 2254. He seeks to: 1) reduce his sentences; and 2) overturn his November 16, 2005 convictions. A jury in the Stark County, Ohio Court of Common Pleas convicted Petitioner on several charges stemming from an August 1, 2005 attempted bank robbery of a Canton, Ohio National City Bank branch office.

Petitioner was indicted and convicted on four counts: two counts of aggravated robbery with firearm specifications; one count of grand theft of a motor vehicle; and one count of attempted kidnapping with firearm specification. (*See* November 21, 2005 Judgment Entry, Respondent's Ex. 5, Doc. 8-1, at 14-16). Petitioner was sentenced on November 18, 2005, to an aggregate term of thirty-two years and six months pursuant to former Ohio sentencing provisions. (*See* November 28, 2005 Judgment Entry, Respondent's Ex. 6, Doc. 8-1, at 17-22). The Ohio Supreme Court subsequently ruled these sentencing provisions unconstitutional in *State v. Foster*, 109 Ohio St. 3d 1 (2006). The court of appeals affirmed Petitioner's convictions, but remanded for resentencing in

accord with *Foster*. *See State v. Jackson*, 2006 WL 3718286 (Ohio App. 5 Dist.), *appeal not allowed*, 113 Ohio St. 3d 1491 (May 2, 2007) (table decision).

On June 15, 2007, the state trial court resentenced Petitioner to the same aggregate prison term. (*See* Judgment Entry, Respondent's Ex. 17, Doc. 8-1, at 168-71).  Petitioner appealed and the state appellate court remanded the case on July 28, 2008, for a second resentencing hearing based on the failure to allow Petitioner his right of allocution. *See State v. Jackson*, 2008 WL 2955395 (Ohio App. 5 Dist). The state appellate court overruled Petitioner's other assignments of error. The Ohio Supreme Court denied Petitioner's motion for a delayed appeal of the July 28, 2008 decision. *See State v. Jackson*, 120 Ohio St. 3d 1414 (Dec. 3, 2008) (table decision).  Meanwhile, on August 18, 2008, the state trial court sentenced Petitioner for the third time, again to the same aggregate thirty-two year, six month sentence. Petitioner did not appeal.

In addition to Petitioner's direct appeals, he made two failed attempts at post-conviction review. On January 22, 2008, Petitioner filed an Ohio Appellate Rule 26(B) application to reopen his appeal based on ineffective assistance of appellate counsel. The state appellate court denied the application on March 25, 2008 as untimely. (Judgment Entry, Respondent's Ex. 28, Doc. 8-2, at 126-27). Petitioner did not appeal. Petitioner secondly filed a motion to overturn the March 25, 2008 decision. The appellate court denied this motion on August 15, 2008 and Petitioner did not appeal. (Judgment Entry, Respondent's Ex. 30, Doc. 8-2, at 187). Also around this time, Petitioner filed a post-conviction petition with the trial court asserting ineffective assistance of trial counsel. The trial court denied this petition on August 6, 2008 and Petitioner did not appeal. (Judgment Entry, Respondent's Ex. 38, Doc. 8-2, at 226).

2

## Overview of Federal Procedural History

On April 24, 2008, Petitioner filed a prior § 2254 habeas corpus petition and motion to stay the petition in the Northern District of Ohio. *Jackson v. Hudson*, Case No. 5:08-CV-1049 (N.D. Ohio) (*See* Docket and Petition, Respondent's Ex. 39-40, Doc. 8-2 at 243-260, 289). Judge Peter C. Economus granted the motion to stay conditioned on Petitioner's filing of status notices regarding state court proceedings. (Order, Doc. 8-2 at 290).  On October 17, 2008, the district court dismissed the case without prejudice for failure to prosecute based on Petitioner's failure to file the required status notices.  Petitioner filed a Federal Civil Rule 60(b) motion for relief from judgment with an affidavit and notice of status on November 3, 2008 (*See* Docket, Doc. 8-2, at 234-44). On December 11, 2008, the district court denied this motion.

On January 26, 2009, before filing the June 15, 2009 petition currently under review,[1] Petitioner moved in the Sixth Circuit Court of Appeals for leave to file a second or successive petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241(b)(1). *See In the matter of Morris Jackson*, Case No. 09-3111 (6th Cir.).  On June 9, 2010, the Sixth Circuit ruled that because the district court dismissed the prior habeas corpus matter without prejudice and without considering the merits – and considering that Petitioner filed his original petition before the September 2008 resentencing – the current petition was not second or successive for purposes of 28 U.S.C.§ 2241(b)(1). (Respondent's June 11, 2010 filing captioned "Notice of Proceedings," Doc. 12). The Sixth Circuit thus denied the motion for leave as unnecessary. (*Id.*).

---

[1] June 15, 2009 serves as the filing date under the prison "mailbox rule" from *Houston v. Lack*, 487 U.S. 266, 270 (1988). The prison mailbox rule of hypothecating a document's signature date as the filing date has been extended to collateral relief petitions.  *See Miller v. Collins*, 305 F.3d 491, 497-98 & n.8 (6th Cir. 2002). The habeas application form used by Petitioner provided for certification of delivery to prison authorities and that date constitutes its filing date. *See id.* at 497-98.

## Petitioner Exhausted State Remedies

Petitioner seeks federal collateral review of his convictions and sentences on nine grounds. Respondent argues that the fourth through ninth grounds have not been exhausted because they concern Petitioner's August 18, 2008 resentencing from which Petitioner took no appeal. Respondent argues that Petitioner failed to utilize a motion for discretionary delayed appeal under Ohio Appellate Rule 5(A).

A court must first examine the central question of exhaustion. *See Clinkscale v. Carter*, 375 F.3d 430, 436-37 (6th Cir. 2004) ("In general, we may grant a petition for a writ of habeas corpus only if 'it appears that . . . the applicant has exhausted the remedies available in the courts of the State'". (quoting 28 U.S.C. § 2254(b)(1)). The exhaustion doctrine requires that the prisoner "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process." *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Petitioner ignores this issue in his traverse. Nonetheless, Respondent is not correct. Petitioner could initiate a delayed appeal from his August 18, 2008 resentencing, but this would be a futile gesture because he had exercised a previous appeal from his June 15, 2007 resentencing, where he raised similar legal challenges to those presented here.

Ohio courts have held that:

> Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.

*State v. Perry*, 10 Ohio St. 2d 175, syllabus ¶ 9 (1967).

The Ohio Supreme Court has held that "a defendant who fails on direct appeal to challenge

4

the sentence imposed on him for an offense is barred by res judicata from appealing that sentence following a remand for resentencing on other offenses." *State v. Saxon,* 109 Ohio St. 3d 176, 181 (2006). Ohio appellate courts have universally applied res judicata in *Foster* resentencing cases when there has been a final judgment, and have refused to consider issues that should or could have been raised in a prior direct appeal. *See State v. Allen*, 2010 WL 2161904, at *1 (Ohio App.); *State v. Foti*, 2010 WL 2025770, at *6 (Ohio App.); *State v. Dillard*, 2010 WL 1237102, at *3 (Ohio App.); *State v. King*, 2010 WL 739868, at *4 (Ohio App.); *State v. Donahue*, 2008 WL 5182817, at *2 (Ohio App.); *State v. McLeod*, 2008 WL 2633292, at *2 (Ohio App.); *State v. Morgan*, 2007 WL 1080654, at *2-3 (Ohio App.). Further, the Ohio Supreme Court has disallowed the use of a state habeas corpus proceeding to sidestep res judicata's bar against successive appellate reviews of the same issues. *See Smith v. Voorhies*, 119 Ohio St. 3d 345, 347 (2008).

Consequently, a second appeal of sentencing issues that were or could have been raised in the prior appeal is barred. Petitioner's grounds are thus deemed to be exhausted because "there is an absence of available State corrective process; or circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B)(I)-(ii).[2]

### Failure to Prosecute Original Petition Does Not Preclude Federal Review of Current Petition

Respondent argues that the district court's dismissal of the original habeas petition for failure to prosecute bars review of the current petition. Although the court explicitly dismissed the prior habeas petition *without prejudice*, Respondent contends that "this Court's dismissal for failure to

---

[2] This section codifies the long-standing rule excusing pursuit of state remedies "if there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief." *Duckworth v. Serrano* 454 U.S. 1, 3 (1981) (citing *Wilwording v. Swenson*, 404 U.S. 249, 250 (1971) (overturned by statute in prison civil rights litigation, *Woodford v. Ngo*, 548 U.S. 81, 84 (2006)).

prosecute is in fact, 'with prejudice.'" (Doc. 8, at 18).

In general, a dismissal for failure to prosecute operates as a judgment on the merits. *See* Federal Civil Rule 41(b); *Plaut v. Spendthrift Farm, Inc*., 514 U.S. 211, 228 (1995).  "[A]n 'adjudication upon the merits is the opposite of a 'dismissal without prejudice.'" *Semtek Int'l Inc. v. Lockheed Martin Corp*., 531 U.S. 497, 505 (2001).  Rule 41(b), however, clearly states that such a dismissal operates as an adjudication on the merits "[u]nless the dismissal order states otherwise." The court's order clearly did not treat the dismissal of the original habeas petition for failure to prosecute as an adjudication on the merits. "The primary meaning of 'dismissal without prejudice,'. . . , is dismissal without barring the plaintiff from returning later, to the same court, with the same underlying claim." *Semtek Int'l Inc.*, 531 U.S. at 505. Accordingly, the prior dismissal for failure to prosecute does not bar review of the current petition.

**Ground One: "Trial court erred in [denying] appellant['s] motion to . . . suppress. Due Process violation under the 14th and 15th amend. Right against self-incrimination, 5th & 6th Amend. U.S. Const." (Doc. 1, at 6).**

In his first state court appeal, Petitioner challenged the admissibility of statements he made to the police in an interview room at the Canton Police Department. *See Jackson*, 2006 WL 3718286, ¶¶ 10, 18-24. Petitioner argued that police coerced him during a custodial interrogation. In his traverse, Petitioner presents one page from his suppression hearing testimony to support his claim that after Canton police transported him from Akron to the Canton Police Department holding room, he: 1) requested to see a lawyer; and 2) again requested to speak to counsel when he was moved to the interrogation room. (Doc. 11-9). Another page submitted by Petitioner confirms that Canton Police Detective Lawver read Petitioner his *Miranda* rights, and presented Petitioner with the "Canton Police Department Notice of Constitutional Rights" form, which Petitioner refused to

sign. (Docs. 11-7, 11-8).

The state trial court found that Petitioner had not unequivocally invoked his right to counsel and denied the motion to suppress his statements made to police. *Jackson*, 2006 WL 3718286 ¶11. Admitted at trial were Petitioner's statements that: 1) he wanted to work out a deal with the prosecutor; 2) in the interview room he asked if an officer had been shot; 3) if he "hadn't run out of gas that day," none of this would have happened; and 4) he never would have shot anybody because he did not put a round in the chamber of his gun. *Id.* at ¶¶10, 20.

The state appellate court recognized Petitioner's claim as a Fifth Amendment claim, and while its decision applied an Ohio Supreme Court decision – *State v. Murphy*, 91 Ohio St. 3d 516, 520 (2001) – it did make a final reference to U.S. Supreme Court precedent:

> {¶ 21} According to Lawver's testimony at the suppression hearing, he and Kandel did not question appellant on the ride from Akron to Canton. Upon arrival at the station, Lawver placed appellant in a holding room, during which time appellant replied that he understood his Miranda rights and would talk with Lawver, but that he would not sign any Miranda notice forms. Appellant was thereupon taken to an interview room, where Lawver again read appellant his Miranda rights. Appellant told the detective, "[M]aybe I should get an attorney." Tr., Suppression Hearing, at 9. Lawver testified that he told appellant it was appellant's decision as to whether to get an attorney and whether to talk with the detectives. *Id.* Appellant proceeded to tell Lawver that he had information about a homicide in Warren, Ohio, and a shooting in Akron. Lawver and appellant then essentially engaged in a circular discussion about appellant working out a deal, with Lawver responding that he would have to relay any such proposals to the prosecutor. *Id.* at 10-12. Toward the end of the interview, Kandel left the room, and appellant told Lawver that he wanted him to know that he wouldn't have shot anybody or shot a cop. *Id.* at 12, 19. After more "rehashing" discussions about a deal, Lawver told appellant that he should get an attorney, and terminated the interview. *Id.* at 14. FN1
>
> > FN1. The detectives honored appellant's request that the interview not be taped. See Tr., Suppression Hearing, at 34, 52.
>
> {¶ 22} Appellant's present challenge to the denial of the suppression motion is essentially two-fold: He argues that he indeed requested an attorney after being

brought back to Canton (see appellant's suppression testimony, Tr. at 47-49), and that even under Detective Lawver's version of events, Lawver did not ensure that appellant understood he could stop the questioning at any time.

{¶ 23} In light of Lawver's testimony, appellant's statement that "maybe" he should get a lawyer falls short of an "unambiguous or unequivocal" request for counsel and invocation of his right to remain silent. See *State v. Murphy* (2001), 91 Ohio St. 3d 516, 520, 747 N.E.2d 765. The court did not accept appellant's version of the non-taped interview, and we will not herein substitute our judgment therefor, as the trier of fact, as opposed to this Court, is in a far better position to weigh the credibility of witnesses. Cf. *State v. Curren*, Morrow App.No. 04 CA 8, 2005-Ohio-4315, f.n. 2, citing *State v. DeHass* (1967), 10 Ohio St. 2d 230, 227 N.E.2d 212. Because appellant's request was not unambiguous or unequivocal, we conclude the detectives had no obligation to cease their questioning at that point. See *Davis v. United States* (1994), 512 U.S. 454, 456-457.

*Jackson,* 2006 WL 3718286, at *3.

**Standards of Review**

On habeas corpus review, the district court must look to the last reasoned state court decision addressing the argument raised in the ground.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). Generally, this review is conducted under Congressionally circumscribed rules set forth in 28 U.S.C. § 2254(d).  The first rule allows the writ to be granted in situations where the state court decision is "contrary to" or "an unreasonable application" of "clearly established" federal law as set forth by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). The second rule governs resolution of factual disputes where a petitioner must prove that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(2).

A state court decision is "contrary to" Supreme Court precedent "'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable

facts.'" *Thaler v. Haynes,* --- U.S. ----, 130 S. Ct. 1171, 1174 (2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Lockyer v. Andrade*, 538 U.S. 63, 73 (2003). A state court "unreasonabl[y] appli[es]" clearly established law when it identifies the correct legal principle from the Supreme Court's decisions, but unreasonably applies it to the facts of the petitioner's case. *See Boykin v. Webb,* 541 F.3d 638, 642 (6th Cir. 2008) (citing *Williams*, 529 U.S. at 407).

When, however, a state court decision fails to address the federal claim, see *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003), or when it does so erroneously, see *Magana v. Hofbauer*, 263 F.3d 542, 551 (6th Cir. 2001), the district court is to apply *de novo* review. *See, e.g.*, *Howard v. Bouchard,* 405 F.3d 459, 467 (6th Cir. 2005) ("Where the state court has not addressed or resolved claims based on federal law, most courts, including this one, have held that the decision is not an adjudication on the merits. Thus, a federal habeas court reviews such unaddressed claims de novo." (internal citation and quotation omitted)); *Maples*, 340 F.3d at 436 ("Where, as here, the state court did not address the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply.").

"Under such review, questions of law, including mixed questions of law and fact, are reviewed *de novo*, and questions of fact are reviewed under the clear-error standard." *Montes v. Trombley,* 599 F.3d 490, 494 (6th Cir. 2010) (citing *Brown v. Smith*, 551 F.3d 424, 430 (6th Cir. 2008)); *see also Cone v. Bell*, --- U.S. ----, 129 S. Ct. 1769, 1784 (2009). When the state appellate court decision does not directly refer to U.S. Supreme Court precedent, but uses state case law, or when it ignores the federal constitutional basis for the issue, the state court decision presents only an indirect review of the federal constitutional issue before it. When state court review is indirect, the Sixth Circuit is clear that the state court decision is not entitled to deferential review under §

2254(d)(1) for it lacks analysis of the federal constitutional claim. *See Benge v. Johnson*, 474 F.3d 236, 246 (6th Cir. 2007) (citing *Danner v. Motley*, 448 F.3d 372, 376 (6th Cir. 2006)); *see also Maples*, 340 F.3d at 436 ("The AEDPA standard of review applies only to 'any claim adjudicated on the merits in state court proceedings.'" (quoting 28 U.S.C. § 2254(d))).

**Review of Ground One**

Respondent argues that the first ground should be reviewed under the constraints of 28 U.S.C. § 2254(d)(1) and (2). He is correct.  The state court based its decision on Fifth Amendment principles directly from Supreme Court precedent. It applied the correct governing Supreme Court decision, *Davis v. United States*, 512 U.S. 452, 462 (1994), which held that the defendant's statement made during custodial interrogation: '"Maybe I should talk to a lawyer' – was not a request for counsel[.]"

Clearly established federal law holds that if at any time during an interview a suspect requests counsel, "he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation." *Tolliver v. Sheets,* 594 F.3d 900, 922 (6th Cir. 2010) (quoting *Davis*, 512 U.S. at 458 (citing *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981)).  This request, however, "must be unambiguous." *Id.* at 922 (citing *Davis,* 512 U.S. at 459). This means that a suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis*, 512 U.S. at 459.

There are two parts to Petitioner's argument. First, with respect to his factual dispute on whether he unambiguously requested counsel, "[o]n habeas review, the state court of appeals's findings of fact must be presumed correct, and can only be discredited if the petitioner can show,

10

by clear and convincing evidence, that the state court's findings were erroneous. 28 U.S.C. § 2254(e)(1)." *Mitzel v. Tate,* 267 F.3d 524, 537 (6th Cir. 2001). Petitioner has not rebutted the conclusion that his request was ambiguous by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Consequently, the state appellate court decision was not based on an unreasonable determination of the facts in light of the evidence presented. *See id.* § 2254(d)(2). Second, with respect to the legal argument concerning the application of *Davis*, the state court decision identified the correct legal principle from the Supreme Court's decisions and reasonably applied it to the facts of Petitioner's case. *See Williams*, 529 U.S. at 407, 412-13. Accordingly, Petitioner's first ground fails.

**Ground Two: "Trial court['] s finding[s] of guilt were against sufficient evidence. Due [process] violation of 14th amend. U.S. Const." (Doc. 1, at 8).**

Petitioner's statement of supporting facts illustrates that his second ground is limited to the narrow issue of sufficiency of identification. He points out that: 1) a van linked to the crimes was checked for fingerprints and came back negative; and 2) several witnesses did not identify him. The state appellate court did not apply federal law in reviewing this claim, but rather lapsed into state law review under Ohio's manifest weight of the evidence standard:

> {¶ 2} On the afternoon of August 1, 2005, Walter Murray was mowing grass at St. Peter's Cemetery located on Cleveland Avenue NW in Canton. While working, Murray noticed two men walking around the area of the cemetery. Shortly thereafter, Murray saw his Dodge Caravan minivan being driven away. Murray called 911 to report his stolen vehicle, providing law enforcement authorities with a description of the suspects and the van.

> {¶ 3} In the meantime, Canton Police Officer Greg Gilmore was working his first day on an off-duty security job for a National City Bank branch at the intersection of Cleveland Avenue NW and 34th Street. Officer Gilmore heard the stolen van report on his radio and realized the cemetery was only fifteen blocks south of the bank. While looking out a bank office window, Officer Gilmore saw a vehicle fitting the description of the stolen van pull into the bank's parking lot. Officer Gilmore

also observed the driver of the van wearing a mask.

{¶ 4} Speculating that the two occupants of the van were going to rob the bank, Officer Gilmore immediately ran out the back door to confront the men before they entered the building. When Officer Gilmore came outside, he saw two masked men running toward him. Gilmore drew his weapon and yelled "police!" several times. He also attempted to run for cover behind a parked truck. As he moved toward the truck, Gilmore fell to the ground. When he got up, the officer saw that the two men had run to the corner of the building.

{¶ 5} Gilmore followed and repeatedly yelled at the two men to show their hands. Instead, one of the men, later identified as Daniel Ivery, pointed a gun at the officer. Gilmore responded by firing his gun at Ivery, who fell to the ground, wounded. Gilmore noticed that Ivery's gun was about ten feet away from him and was no longer a threat. Gilmore waited for back-up to arrive.

{¶ 6} Meanwhile, Trudy Akins and her husband, passing by the bank area as they were driving south on Cleveland Avenue, heard gunshots and saw a man running across the road toward the parking lot of the Milk and Honey Restaurant. They watched the man take off his mask and soon emerge in a small green automobile. Although Mr. Akins tried to give chase in their vehicle, the man drove away too quickly.

{¶ 7} The owner of the green car which had just left the Milk and Honey area was Sara Bineger. She recalled a man with a mask on his forehead pointed a gun at her and said "scoot over." When she hesitated, the man tried to sit on her, at which point she exited her car via the passenger door. Bineger's car was later located in Akron, thanks to the global positioning chip in her cell phone, which she had left in the vehicle.

{¶ 8} Jim Bracken, a customer at the Milk and Honey, heard gunshots as he left the restaurant. He also saw a man run from the bank to the restaurant parking lot.

{¶ 9} Earlier that day, Canton police had received a report of a suspicious vehicle parked near Route 62, not far from the bank's location. Police determined that this vehicle belonged to appellant. Police also spoke with some of Daniel Ivery's acquaintances and relatives in Akron, and determined that appellant was Ivery's friend. Furthermore, Trudy Akins, one of the witnesses, picked appellant out of a photo array. A warrant was thereupon issued for appellant, who was apprehended by the Akron Police Department.

{¶ 10} Two Canton police detectives, Bruce Lawver and Mark Kandel, drove to Akron and brought appellant to Canton for questioning. Appellant was given his Miranda rights and stated he understood them, although he would not sign a written

Miranda form. Appellant stated he would talk with Detective Lawver. As analyzed in more detail infra, appellant was taken to an interview room, where, among other things, according to Lawver, he repeatedly asked about working out a "deal" with the prosecutor.

* * * *

{¶ 27} Appellant first generally challenges the sufficiency of the evidence of all four of his convictions by raising the issue of identification of the perpetrator. We are cognizant that only passerby Trudy Akins made a positive identification of appellant being at the scene. Although she first told the officers she "felt" appellant was the man she saw running from the scene, she testified at trial in pertinent part as follows:

{¶ 28} " * * * When he pulled out and turned around and looked, we were right behind him. And then later on, he turned around and looked. I didn't-I couldn't obviously tell for sure that it was him at that point, but when he pulled out of Milk & Honey, and turned around and looked, it was definitely him, yes. We were close enough I could see him definitely." Tr. at 205.

* * * *

{¶ 31} In considering an appeal concerning the manifest weight of the evidence, our standard is as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered ." *State v. Martin* (1983), 20 Ohio App. 3d 172, 175, 485 N.E.2d 717. See, also, *State v. Thompkins* (1997), 78 Ohio St. 3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 485 N.E.2d 717.

{¶ 32} As previously recited, the State introduced, inter alia, the testimony of eyewitnesses Walter Murray, Officer Gilmore, Trudy Akins, Sara Bineger, and Jim Bracken. We have reviewed this evidence, along with the trial evidence of appellant's incriminating statements to Canton police and the circumstantial evidence regarding appellant's abandoned vehicle just blocks from the bank, as well as his friendship with fellow perpetrator Daniel Ivery, and we do not find the result of the trial led to a manifest miscarriage of justice. We hold appellant's convictions were not against the manifest weight of the evidence.

*Jackson*, 2006 WL 3718286, at *1-5.

13

**Governing Law**

The federal constitutional concept of sufficiency of the evidence springs from the Fourteenth Amendment Due Process requirement of conviction only on proof of guilt beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 309-16 (1979) (citing *In re Winship*, 397 U.S. 358, 362-63 (l970)). The due process standard for sufficiency of the evidence is: "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-3l9 (emphasis in original); *Wright v. West*, 505 U.S. 277 (1992) (applying *Jackson* standard in habeas case).  "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original).  Further, "'a reviewing court must consider all of the evidence admitted by the trial court,' regardless whether that evidence was admitted erroneously." *McDaniel v. Brown,* --- U.S. ----, 130 S. Ct. 665, 672 (2010) (per curiam) (quoting *Lockhart v. Nelson*, 488 U.S. 33, 41 (1988)).

**Standard of Review**

The appropriate standard of review for Petitioner's second ground presents a complex question. The state court decision did not address Petitioner's sufficiency of the evidence argument, but focused exclusively on his alternative – Ohio law-based – manifest weight of the evidence argument. Under Ohio law, a sufficiency of the evidence claim is not the same as a claim that the verdict is not supported by the manifest weight of the evidence. *See State v. Elmore,* 111 Ohio St. 3d 515, 522 (2006). A manifest weight of the evidence claim is not based on due process concerns – as is sufficiency of the evidence – but is a "separate and distinct test" where the court uses its

14

discretionary power to weigh and resolve conflicts in the evidence by considering reasonable inferences and the credibility of witnesses. *Id*. (citing *State v. Thompkins*, 78 Ohio St. 3d 380, 387 (1997). The state court decision in this case thus did not apply federal law.

      Respondent nonetheless argues under §§ 2254(d)(1) and (2) that Petitioner has not demonstrated the state court judgment was contrary to or an unreasonable application of clearly established federal law. Respondent contends that Petitioner's disagreement with credibility determinations is a dispute with the jury's resolution of the facts. It is clear from the record, however, that Petitioner challenged the sufficiency of the evidence. *See Jackson*, 2006 WL 3718286, ¶ 27. In *Nash v. Eberlin*, 258 F. App'x 761, 764-65 & n.4 (6th Cir. 2007), the Sixth Circuit found the petitioner's manifest weight of the evidence claim effectively presented a cognizable sufficiency of the evidence claim to the state courts and further presented a sufficiency of the evidence claim for habeas review. The court determined that it was not permitted to conduct *de novo* review and opted to conduct its review under the "unreasonable application" standard in § 2254(d)(1). However, in this matter there was no application of federal law in the state appellate court decision to review as either reasonable or unreasonable.[3] Because the argument was unresolved, *de novo* review applies. *Cf. Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (finding *de novo* review appropriate when there was no state court decision resolving the issue of prejudice due to ineffective assistance of counsel).

---

[3] Nor would the "contrary to" standard from § 2254(d)(1) fit here. When the state decision addresses the argument but does not identify what legal precedent or standard was used as the foundation for its decision, a deferential standard of review applies, which liberally states, "that a state court need not even be aware of all precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (quoting *Early v. Packer*, 537 U.S. 3, 7-8 (2000) (per curiam)).

**Review of Second Ground**

Even under a *de novo* standard of review, Petitioner cannot succeed on his second ground. Under the *Jackson* standard, "a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel*, 130 S. Ct. at 673 (quoting *Jackson*, 443 U.S. at 326). *De novo* review under the standard set forth in *Jackson* and its progeny illustrates that there was sufficient evidence supporting the convictions as set out by the state appellate court decision. This is so even despite little direct evidence of the perpetrator's identification. Accordingly, there is no merit to Petitioner's argument on his second ground.

**Ground Three: "Trial court erred in not finding aggr. robbery to be allied offense to the related charge of att. kidnapping. Due process violation 14th amend. violation under the 5th Amendment [U].[S]. Const. double jeopardy." (Doc. 1, at 9).**

On August 18, 2008, Petitioner was sentenced to 10 years on each aggravated robbery conviction to be served consecutively and 5 years on attempted kidnapping to be served consecutively to the aggravated robbery sentences and grand theft of a motor vehicle sentence. (*See* September 4, 2008 Judgment Entry, Respondent's Ex. 25, Doc. 8-1, at 310-14). Petitioner argued on appeal that the aggravated robbery conviction involving Sara Bineger's automobile was an allied offense of similar import to the attempted kidnapping conviction. Respondent recognizes that this argument has its basis in Ohio's multiple count statute, Ohio Rev. Code § 2941.25, but points out that the statute was adopted to satisfy the federal prohibition against double jeopardy. Respondent further argues against retroactive application of *State v. Winn*, 121 Ohio State 3d 413 (2009), which requires merger of kidnapping and aggravated robbery convictions. Respondent clearly seeks a

16

resolution of the third ground under federal double jeopardy principles.

**Procedural Default**

Respondent does not directly raise the issue of procedural default, but does argue – in passing – that "[w]hether two crimes should be merged because they involve related acts is a question of state law not cognizable in federal habeas corpus." (Doc. 8, at 34).

To avoid procedural default, a petitioner must "fairly present to the state courts either the substance or substantial equivalent of the federal claim he is presenting to a federal habeas court." *Hicks v. Straub*, 377 F.3d 538, 552 (6th Cir. 2004). On direct appeal, Petitioner argued that the trial court erred in not finding aggravated robbery and attempted kidnapping to be allied offenses under Ohio law. In the present petition, Petitioner argues that the imposition of consecutive sentences for aggravated robbery and attempted kidnapping violate both Ohio law and the Double Jeopardy Clause.

Several courts have, however, held that raising an allied offenses argument under Ohio law is enough to put a state court on notice that a petitioner is raising a double jeopardy argument. *See Palmer v. Haviland*, 2006 WL 1308219, *6 (S.D. Ohio 2006), *aff'd* 273 F. App'x 480 (6th Cir. 2008); *Fortner v. Warden*, 2010 WL 1839041, *4 (S.D. Ohio 2010); *McKitrick v. Jeffries*, Case No. 3:05-CV-637 (Doc. 14, at 5-7) (N.D. Ohio 2006). This is particularly so in light of the Supreme Court's holding in *Albernaz v. United States*, 450 U.S. 333, 344 (1981), that "the question of what punishments are constitutionally permissible [under the Double Jeopardy Clause] is not different from the question of what punishments the Legislative Branch intended to be imposed." Ohio Rev. Code § 2941.25 – the allied offenses statute – dictates what punishments the Ohio legislature imposed. As the Ohio Supreme Court explained in *Rance*, 85 Ohio St. 2d 632, 639 (1999):

17

R.C. 2941.25's two-step test answers the constitutional and state statutory inquiries. The statute manifests the General Assembly's intent to permit, in appropriate cases, cumulative punishments for the same conduct. The sole question, then, is one of state statutory construction: are the offenses at issue those certain offenses for which the General Assembly has approved multiple convictions pursuant to R.C. 2941.25?

Petitioner's allied offenses argument is thus the substantial equivalent of his double jeopardy claim and he fairly presented it to the Ohio state courts.

**Governing Law**

The Supreme Court has identified three ways in which the Double Jeopardy Clause protects a criminal defendant's rights. It "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted). Petitioner's claim falls under the multiple punishments prong.

A legislature defines criminal action and criminal punishment. *Whalen v. U.S.*, 445 U.S. 684, 689 (1980). A legislature may prescribe the imposition of cumulative punishments in connection with the same criminal activity without violating double jeopardy. *Albernaz*, 450 U.S. at 344 ("Thus, the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed. Where Congress intended, as it did here, to impose multiple punishments, imposition of such sentences does not violate the Constitution."). A court may not, however, exceed the authorization granted to it by a legislature by imposing multiple punishments for activity the legislature intended to punish only once. *Missouri v. Hunter*, 459 U.S. 359, 366 (1983) ("With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984) ("We

18

accept, as we must, the Ohio Supreme Court's determination that the Ohio Legislature did not intend cumulative punishment for the two pairs of crimes involved here."); *Brown v. Ohio*, 432 U.S. 161, 165 (1977) ("Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense."). Accordingly, "whether punishments are 'multiple' is essentially one of legislative intent." *Johnson*, 467 U.S. at 499 (citing *Hunter*, 459 U.S. at 366-68); *Banner v. Davis*, 886 F.2d 777, 779-80 (6th Cir. 1989).

To determine whether a legislature intended to permit multiple punishments, a court's role is limited to discerning "'whether the legislature intended to punish cumulatively the same conduct which violates two statutes.'" *Carter v. Carter*, 59 F. App'x 104, 107 (6th Cir. 2003) (quoting *U.S. v. Johnson*, 22 F.3d 106, 107-08 (6th Cir. 1994)). A federal court is also "bound to accept" a state court's construction of that state's statutes. *Hunter*, 459 U.S. at 368; *Johnson*, 467 U.S. at 499 ("We accept, as we must, the Ohio Supreme Court's determination that the Ohio Legislature did not intend cumulative punishment[.]"); *see also Banner*, 886 F.2d at 780 (noting that "once a state court has determined that the state legislature intended cumulative punishments, a federal habeas court must defer to that determination"). A federal court is not, however, "bound by the [state court's] legal conclusion that . . . two statutes violate the Double Jeopardy Clause" because "[l]egislatures, not courts, prescribe the scope of punishments." *Hunter*, 459 U.S. at 368; *see also White v. Howes*, 586 F.3d 1025, 1031 (6th Cir. 2009) (quoting *Hunter*).     In general, courts discern legislative intent from the statutory language, legislative history, and by application of the test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). The Supreme Court held in *Blockburger* that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be

19

applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* The *Blockburger* rule, however, is not controlling when legislative intent is clear. *Garrett v. U.S.*, 471 U.S. 773, 779 (1985); *Palmer v. Haviland*, 273 F. App'x 480, 486 (6th Cir. 2008) (on federal habeas review "[w]e cannot independently apply typical rules of statutory construction, including the *Blockburger* test, to a state statute and conclude that state courts were wrong in their reading of legislative intent").

A Sixth Circuit panel summarized the law on legislative intent and multiple punishments: "Thus, if a legislature permits multiple punishments, a court can impose such punishments; if a legislature prohibits multiple punishments, a court cannot impose such punishments without running afoul of the federal prohibition against double jeopardy." *Palmer*, 273 F. App'x at 484.

In Ohio, the legislature's intent in the multiple punishment area is found in the state multiple count statute:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

Ohio Rev. Code. § 2941.25; *see also Rance*, 85 Ohio St. 3d at 635 ("We discern the General Assembly's intent on this subject through review of Ohio's multiple-count statute . . . This court has stated that Ohio's multiple-count statute is a clear indication of the General Assembly's intent to permit cumulative sentencing for the commission of certain offenses." (internal citation omitted)). Two statutory offenses are "allied offenses of similar import" if the elements of each offense

20

"correspond to such a degree that the commission of one crime will result in the commission of the other." *Id.* at 638.

Consequently, this is not as simple a matter as envisioned by Justice Scalia of mere comparison of the statutes to see if one differs. *Compare Lewis v. U.S.,* 523 U.S. 155, 176-177 (1998) (Scalia, J. concurring) (citing *Blockburger*) ("Two offenses are different, for double jeopardy purposes, whenever each contains an element that the other does not."); *with Rance*, 85 Ohio St. 3d at 636 ("Therefore, cases discussing and applying *Blockburger* are helpful, though not controlling, in our examination of Ohio law.").  Ohio's statutory prohibition against multiple punishment does not require that the elements of the offenses be identical for offenses to be allied, but requires only that the elements are similar in the abstract. *State v. Cabrales*, 118 Ohio St. 3d 54, 59 (2008); *Rance*, 85 Ohio St. 3d at 636 ("[W]e believe that comparison of the statutory elements in the abstract is the more functional test, producing 'clear legal lines capable of application in particular cases.'").

**Standard of Review**

The state appellate court's decision on this issue was brief:

{¶ 35} In considering whether offenses are allied offenses of similar import, the Ohio Supreme Court has stated that rather than analyzing the offenses in light of the specific facts of the case, the elements of the offenses are to be compared in the abstract. *State v. Rance* (1999), 85 Ohio St. 3d 632, 710 N.E.2d 699.

{¶ 36} In *State v. McCoy*, Licking App.No. 05-CA-29, 2006-Ohio-56, we considered a nearly identical question and found aggravated robbery and kidnapping are not allied offenses of similar import.

*Jackson,* 2006 WL 3718286, at *5.

Respondent quotes extensively from *State v. McCoy*, 2006 WL 39100 (Ohio App.), the Ohio appellate decision on which the appellate court in the instant case relied in finding aggravated

21

robbery and attempted kidnapping not allied offenses. The court's decision in *McCoy* was not, however, decided on federal constitutional principles. There is thus either no decision on the federal claim or an indirect decision. Either way, *de novo* review is appropriate. *See Danner*, 448 F.3d at 376 (finding *de novo* review appropriate where state courts relied on state court decisions in evaluating a Sixth Amendment confrontation claim); *Wiggins*, 539 U.S. at 534 (finding *de novo* review appropriate where state court did not decide federal issue).

**Review of Third Ground**

In a case decided after Petitioner had exhausted his appellate remedies, the Ohio Supreme Court held that kidnapping and aggravated robbery are allied offenses of similar import. *Winn*, 121 Ohio St. 3d at 416-17. The court in *Winn*, however, also found that this conclusion was "in keeping with 30 years of precedent." *Id.* at 417 (citing *State v. Logan*, 60 Ohio St. 2d 126 (1979); *State v. Jenkins*, 15 Ohio St. 3d 164 (1984); *State v. Fears*, 86 Ohio St. 3d 329 (1999); *State v. Davis*, 116 Ohio St. 3d 404 (2008)).

In *Logan*, the court noted:

> For example, when a person commits the crime of robbery, he must, by the very nature of the crime, restrain the victim for a sufficient amount of time to complete the robbery. Under our statutes, he simultaneously commits the offense of kidnapping (R.C. 2905.01(A)(2)[)] by forcibly restraining the victim to facilitate the commission of a felony. In that instance, without more, there exists a single animus, and R.C. 2941.25 prohibits convictions for both offenses.

60 Ohio St. 2d at 131-32. The court went on to explain that where restraint is prolonged, the confinement is secretive, or the movement is substantial, a person may be found to have a separate animus as to each offense and may be punished cumulatively. *Id.* at 135; *see also id.* ("The primary issue, however, is whether the restraint or movement of the victim is merely incidental to a separate underlying crime, or, instead, whether it has significance independent of the other offense.").

22

Likewise, in *Fears* – a case decided after the Ohio Supreme Court's decision in *Rance* – the court held that aggravated robbery and kidnapping are allied offenses for purposes of capital sentencing specifications.[4] The court explained:

> In [*State v.*] *Jenkins*[, 15 Ohio St. 3d 164,] 198 [n.29 (1984)], [], we stated that "implicit within every robbery (and aggravated robbery) is a kidnapping." *Therefore, a kidnapping specification merges with an aggravated robbery specification unless the offenses were committed with a separate animus.* R.C. 2941.25(B). Thus, when a kidnapping is committed during another crime, there exists no separate animus where the restraint or movement of the victim is merely incidental to the underlying crime. *State v. Logan* (1979), 60 Ohio St. 2d 126, [], syllabus.

86 Ohio St. 3d at 344 (emphasis added).

These decisions were based on the state law test of whether the commission of one offense would necessarily result in the commission of the other. *See Fears*, 86 Ohio St. 3d at 344; *Logan*, 60 Ohio St. 2d. at 131-32 ("[W]hen a person commits the crime of robbery, he must, by the very nature of the crime, restrain the victim for a sufficient period of time to complete the robbery. Under our statutes, he simultaneously commits the offense of kidnapping[.]"); *see also State v. Rice*, 69 Ohio St. 2d 422, 424 (1982). The state law test itself is, however, not dispositive. The relevant point for federal double jeopardy purposes is whether there is legislative intent to punish under both statutes. *See White*, 586 F.3d at 1030 (recognizing Michigan's Supreme Court finding that one cannot commit crime of  felon-in-possession without simultaneously violating felony-firearm statute, but finding intent to punish under both statutes).  A federal reviewing court must defer to the state supreme court's interpretation of legislative intent.  *Ohio v. Johnson*, 467 U.S. at 499.

This leads then to the question Respondent raises of whether there has been a change of law.

---

[4] Although *Fears* involved capital sentencing specifications, "[t]he analysis used to determine whether two aggravating circumstances merge is the same as that used to determine whether the two offenses are allied offenses of similar import." *State v. Yarborough*, 95 Ohio St. 3d 227, 247 (2002).

Respondent argues that under state law, new judicial rulings may be applied only to pending cases. Respondent is correct that under Ohio law, "new judicial ruling[s] may not be applied retroactively to a conviction that has become final, i.e., where the accused has exhausted all of his appellate remedies." *Ali v. State*, 104 Ohio St. 3d 328, 329 (2004). Respondent is thus correct that *Winn*, 121 Ohio St. 3d at 416-17, cannot apply to Petitioner.

But at the time of Petitioner's resentencing in August 2008 – and prior to the Ohio Supreme Court's decision in *Winn* – as discussed above, it was already accepted by Ohio courts that kidnapping and aggravated robbery were allied offenses of similar import. *See Logan*, 60 Ohio St. 2d at 131-32; *Fears*, 86 Ohio St. 3d at 344. Published Ohio appellate decisions held similarly:

> Every robbery necessarily involves a kidnapping due to the restraint of the victim's movements during the robbery. See *State v. Reynolds* (1998), 80 Ohio St. 3d 670, 682, []; *State v. Waddy* (1992), 63 Ohio St. 3d 424, 448, []; *State v. Logan* (1979), 60 Ohio St. 2d 126, 130[].

*State v. Gore,* 131 Ohio App. 3d 197, 202 (1999).[5] Additionally, in *State v. Latson*, 133 Ohio App. 3d 475, 478 (1999), the appellate court considered *Rance* and *Logan* before remanding the case on this issue under the state's plain error rule for the trial court to ascertain whether there was a separate animus for the aggravated robbery to distinguish it from the kidnapping. *See* Ohio Rev. Code § 2941.25(B) (allowing cumulative punishment for similar offense if there is "separate animus as to each").  Also prior to Petitioner's August 2008 resentencing, the appellate court in *Winn* held – based on *Logan* – that a defendant could not be convicted of both kidnapping and aggravated robbery when the two crimes are not committed with separate animus. *See State v. Winn*, 173 Ohio App. 3d 202, 209 (2007). Therefore, contrary to Respondent's contention *Winn* did not present a new rule of law

---

[5] In *Gore*, however, the court found the offenses not allied because they involved separate conduct under § 2941.25(B). *Gore*, 131 Ohio App. 3d at 202; *see also* Ohio Rev. Code § 2941.25(B) ("where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each.").

or a departure from accepted state precedent, as evidenced from published state case law.[6]

Accordingly, *de novo* review of Petitioner's third ground shows that the writ should be granted to the limited extent of remanding to the trial court for resentencing based on a federal double jeopardy violation in the imposition of multiple punishments for aggravated robbery and kidnapping – without a finding of separate animus – contrary to the Ohio's legislature's intent.

**Ground Four: "Trial court erred in sentencing appellant to more than minimum-maximum consecutive prison terms when statue imposed were not available to the court at the time the offense were committed. Due process and Ex Post Facto clause of the Ohio and U.S. Const." (Doc. 1, at 11).**

**Ground Five: "Trial court erred in sentencing petitioner to more than minimum-maximum, consecutive prison terms with no additional fact finding [. . .] made by the jury. Violation of due process clause of the 14th amend." (Doc. 1, at 13).**

**Ground Six: "Trial court erred in sentencing petitioner to more than minimum-maximum, consecutive prison terms when he had neither actual nor constructive notice that those sentences were a possible punishment for the offense. Violation of [. . .] Due process." (Doc. 1, at 14).**

**Ground Seven: "Trial court erred when it sentenced appellant to more than minimum-maximum, consecutive sentences. Based on the Ohio Supreme Court['s] severance of the offending provisions under Foster, [w]hich was an act in violation of the Separation of Powers." (Doc. 1, at 16).**

**Ground Eight: "Trial court erred in sentencing defendant-petitioner to more than the**

---

[6] Notably, another court in this district granted habeas relief in 2006 on grounds that kidnapping and robbery are allied offenses of similar import under Ohio Rev. Code § 2941.25. *See McKitrick v. Jeffries*, Case No. 05-CV-637 (Doc. 14, at 20-21) (N.D. Ohio 2006). The court in *McKitrick* relied on "the Ohio Supreme Court's explicit holding in *Fears* [that] the Ohio legislature intended to impose cumulative punishments for kidnapping and robbery under Ohio Rev. Code § 2941.25(B) *only* if the crimes were committed with a separate animus." *Id.* In granting habeas relief, the court explained:

> [Because] the trial court (1) erroneously found that Petitioner's offenses were of dissimilar import under § 2941.25(A), and (2) failed to find his offenses were committed with a separate animus . . . the trial court's imposition of consecutive sentences was contrary to the intent of the Ohio legislature and therefore contrary to the constitutional protections against double jeopardy as stated by the Supreme Court in *Whalen*, *Missouri*, and *Albernaz*.

*Id.* (internal citation to the record omitted).

**minimum-maximum prison terms consecutively, when the rule on lenity dictated a lesser penalty. Due process violation." (Doc. 1, at 17).**

**Ground Nine: "Trial court erred in sentencing defendant-petitioner to more than minimum-maximum consecutive prison terms when the legislature[ ] drafting the provisions demonstrated intent to limit judicial discretion to impose such sentences. Due process violation." (Doc. 1, at 18).**

Petitioner's final six grounds all relate to the February 27, 2006, Ohio Supreme Court decision in *State v. Foster*, 109 Ohio St. 3d 1 (2006). In that case, the Ohio Supreme Court re-evaluated the state's sentencing scheme in light of U.S. Supreme Court decisions in *Apprendi v. New Jersey,* 530 U.S. 466 (2000), *Blakely v. Washington,* 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005). The court determined that Ohio's felony sentencing plan is a "hybrid" of determinate and indeterminate sentencing. *Foster*, 109 Ohio St. 3d at 12. *Foster* severed the determinate aspects of the system. *Id.* at 17. Following the lead of state supreme court decisions in Indiana and New Jersey, *id.* at 27 n.98, the Ohio Supreme Court eviscerated § 2929.14(B)'s presumption in favor of a minimum term for offenders who had not served time in prison, and severed § 2929.14(E)'s judicial fact-finding requirements prior to imposing consecutive sentences. *Id*. at 20. The Ohio Supreme Court struck down the statutory requirements that permitted judges to impose heightened sentences only after engaging in additional fact-finding as found unconstitutional in *Blakely. Id.* at 19-20, 25. Petitioner's grievance is that *Foster* made these changes applicable to all cases pending on appeal, which included his appeal. *See id*. at 31.

Respondent does not address Petitioner's fourth through ninth grounds beyond his claim that they have not been exhausted. As explained above, that argument is incorrect. It could be argued that Petitioner invited error because in his first appeal, Petitioner argued to be resentenced under what were then the recent changes in the law imposed under *Foster*. *See Jackson*, 2006 WL 3718286, at

26

*5-6. Obviously, Petitioner was dissatisfied when he received the same sentence, and then challenged the sentencing court's authority to apply *Foster* retroactively. *See Jackson*, 2008 WL 2955395.

However, Petitioner's constitutional challenges to *Foster* based on due process, retroactive application of *Foster*, and ex post facto laws were resolved in *Hooks v. Sheets*, 603 F.3d 316, 320-21 (6th Cir. 2010), and consequently, fail under *de novo* review.

Further, Petitioner's remaining arguments regarding separation of powers and leniency are frivolous. Beginning with *Marbury v. Madison*, 1 Cranch 137, 2 L.Ed. 60 (1803), and followed by *Martin v. Hunter's Lessee*, 1 Wheat. 304, 14 U.S. 304 (1816), the U.S. Supreme Court undertook supervision of executive and then legislative branches and declared that "[t]he courts of the United States can, without question, revise the proceedings of the executive and legislative authorities of the states, and if they are found to be contrary to the constitution, may declare them to be of no legal validity." *Martin*, 14 U.S. at 344.

The Ohio Supreme Court began its review of constitutionality of state law more tepidly. *See Bank of Toledo v. City of Toledo,* 1 Ohio St. 622, 633, 1853 WL 59 (1853) ("Some of the most eminent Judges of England have never hesitated to declare an act of Parliament void, which was against common right and natural justice, or in violation of those original and fundamental rights for the security of which government was instituted."(citations omitted)). However, the Ohio Supreme Court now views itself as "created as part of a system of checks and balances" where the General Assembly's legislation is "presumptively valid," but with the court acting in the role of "judicial arbiter" over constitutionality of that legislation.  *DeRolph v. State,* 78 Ohio St. 3d 193, 198 (1997). The Ohio Supreme Court – when called upon – will intervene to determine the constitutionality of state law, and this power is unquestioned.

27

Regarding the rule of lenity, Ohio Revised Code § 2901.04(A) provides that, as rule of construction, Ohio statutes must be strictly construed against the state and liberally construed in favor of the accused. *See State v. Elmore*, 122 Ohio St. 3d 472 (2009). The Ohio Supreme Court has held that the rule of lenity does not require state trial courts to impose minimum concurrent terms in *Foster* resentencings. *Id.* at 481. There is no constitutional equivalent. "The Eighth Amendment, which forbids cruel and unusual punishment, contains a 'narrow proportionality principle that 'applies to non-capital sentences.'" *Ewing v. California*, 538 U.S. 11, 20 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 966-97 (1981) (Kennedy, J., concurring in part and concurring in judgment)). The contours of this right, however, "aren't clear" and are "applicable only in the 'exceedingly rare' and 'extreme' case." *Lockyer*, 538 U.S. at 73 (quoting *Harmelin*, 501 U.S. at 1001). But for the one constitutional violation based on erroneous multiple punishment for aggravated robbery and attempted kidnapping, Petitioner's sentences fit within the applicable sentence ranges and he demonstrates no basis for concern under the Eighth Amendment.

## Conclusion and Recommendation

Following review of the petition and applicable law, with respect to Ground One, Petitioner has not demonstrated that he is in custody pursuant to a judgment of the state court which resulted in a decision that was contrary to or involved an unreasonable application of federal law as determined by the Supreme Court of the United States or was the result of a decision based on an unreasonable interpretation of the facts in light of the evidence in the State court proceeding. *See* 28 U.S.C. § 2254(d)(1) and (2). Further, following *de novo* review of Grounds Two and Four through Nine, Petitioner has not demonstrated that he is in custody as a result of federal constitutional error which had a substantial and injurious effect or influence on the jury's verdict. *See O'Neal v.*

28

*McAnich*, 513 U.S. 432, 438-39 (1995); *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). Nor has he demonstrated sentencing error under those grounds. Further with respect to those grounds, Petitioner has not demonstrated any error resulting in a denial of fundamental fairness or cause to hesitate based on the probability of actual innocence. The writ should be denied with respect to those grounds.

However, following *de novo* review of Ground Three, the writ should be granted to the limited extent of remanding this case to the Stark County Court of Common Pleas for resentencing due to the violation of federal double jeopardy in the imposition of multiple punishments for aggravated robbery and kidnapping, contrary to the Ohio's legislature's intent.

Finally, there has been no demonstrated need for an evidentiary hearing.

s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).